1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Craig B. Sanders, Esq. (Cal Bar 284397)
        csanders@sanderslaw.group
**SANDERS LAW GROUP**
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
Telephone: (516) 203-7600
Facsimile: (516) 282-7878

*Attorneys for Plaintiff*
*Robert Guillory*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GUILLORY,<br><br>        Plaintiff,<br><br>    vs.<br><br>BACKGRID USA, INC., and THE GROSBY GROUP, INC.,<br><br><br>        Defendants. | Case No. 2:23-cv-00776-FLA RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BACKGRID USA, INC.'S MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFF**<br><br>Action Filed: February 2, 2023<br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Date: June 30, 2023<br>Time: 1:30 p.m.<br>Location:    First Street Courthouse<br>             350 W. 1st Street<br>             Courtroom 6B<br>             6th Floor<br>             Los Angeles, CA 90012 |

2:23-cv-00776-FLA RAO

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................i

TABLE OF AUTHORITIES ...................................................... ii

I.    INTRODUCTION ..................................................1

II.   STATEMENT OF FACTS .........................................3

III.  ARGUMENT.......................................................8

  A.   THERE WAS NOT NOR IS ANY ATTORNEY-CLIENT RELATIONSHIP BETWEEN SANDERS AND BACKGRID ......................................9

  B.   SANDERS' RELATIONSHIP WITH FFN IS IRRELEVANT............................10

    i.  Backgrid Lacks Standing to Assert any Right Otherwise Belonging to FFN ..................................................10

    ii.  Sanders Owes No Duty to Backgrid's Principals ...............11

  C.   BACKGRID'S "SUBSTANTIALLY RELATED" ARGUMENT IS ERRONEOUS ........................................................13

  D.   THE COURT SHOULD EXERCISE ITS EQUITABLE POWERS AND SANCTION DEFENDANT FOR BRINGING A WHOLLY FRIVOLOUS MOTION ...........................................................15

CONCLUSION.................................................17

# TABLE OF AUTHORITIES

## Cases

*Acacia Pat. Acquisition, LLC v. Superior Ct.*,
234 Cal. App. 4th 1091, 184 Cal. Rptr. 3d 583 (2015) ........................................ 14

*Allied/Royal Parking L.P. v. United States*,
166 F.3d 1000 (9th Cir. 1999) .................................................................. 11

*Amlong & Amlong, P.A. v. Denny's, Inc.*
500 F.3d 1230 (11th Cir. 2007) ................................................................. 16

*B.K.B. v. Maui Police Dep't*,
276 F.3d 1091 (9th Cir. 2002), as amended (Feb. 20, 2002) ............................. 15

*Barber v. Miller*,
146 F.3d 707 (9th Cir. 1998) .................................................................... 15

*Barnes v. Dalton*,
158 F.3d 1212 (11th Cir. 1998) ................................................................. 16

*Beery v. State Bar*,
43 Cal. 3d 802, 739 P.2d 1289 (1987) ......................................................... 9

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001) ................................................................. 16

*Comden v. Superior Court*,
20 Cal. 3d 906 (1978) ........................................................................... 8

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) .................................................................... 15

*Glatter v. Mroz* (*In re Mroz*),
65 F.3d 1567 (11th Cir. 1995) .................................................................. 16

*Gwynn v. Walker* (*In re Walker*),
532 F.3d 1304 (11th Cir. 2008) ................................................................. 16

*In re Haney*,
No. 21-02007-TOM-13, 2022 WL 412809  (Bankr. N.D. Ala. Feb. 10,
2022) ........................................................................................... 16

*In re Keegan Mgmt. Co., Sec. Lit.*,
    78 F.3d 431 (9th Cir. 1996). ...................................................................15

*Jessen v. Hartford Cas. Ins. Co.*,
    111 Cal. App. 4th 698, 3 Cal. Rptr. 3d 877 (2003) ..............................14

*Kelly v. Roker*,
    No. 11-5822, 2012 WL 851558 (N.D. Cal. Mar. 13, 2012) .................9

*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Ct.*,
    121 Cal. App. 4th 773, 17 Cal. Rptr. 3d 467 (2004) ............................12

*Meehan v. Hopps*,
    144 Cal. App. 2d 284, 301 P.2d 10 (1956)....................................11, 12

*Monster Energy Co. v. Vital Pharms., Inc.*,
    No. EDCV181882JGBSHKX, 2018 WL 6431870 (C.D. Cal. Nov. 30, 2018) ....................................................................................................13, 14

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
    69 Cal. App. 4th 223, 81 Cal. Rptr. 2d 425 (1999) ............................14

*Nat'l Football League Properties, Inc. v. Superior Ct.*,
    65 Cal. App. 4th 100, 75 Cal. Rptr. 2d 893 (1998) ............................13

*Northern Plains Resource Council v. Lujan*,
    874 F.2d 661 (9th Cir. 1989) ..............................................................11

*Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*,
    760 F.2d 1045 (9th Cir. 1985) ..............................................................8

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*,
    20 Cal. 4th 1135, 86 Cal.Rptr.2d 816, 980 P.2d 371 (1999)............8, 9

*Ramirez v. Trans Union, LLC*,
    No. 12-0632, 2013 WL 1164921 (N.D. Cal. Mar. 20, 2013) ...............9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................8

*Skarbrevik v. Cohen, England & Whitfield*,
    231 Cal. App. 3d 692,  282 Cal. Rptr. 627 (Ct. App. 1991)..........12, 13

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO MOTION TO DISQUALIFY COUNSEL

*Sprengel v. Zbylut*,
    40 Cal. App. 5th 1028, 253 Cal. Rptr. 3d 561 (2019), as modified (Sept.
    17, 2019), as modified (Nov. 4, 2019)..................................................................12

*United States v. Blodgett*,
    709 F.2d 608 (9th Cir. 1983) .................................................................................15

*Visa U.S.A., Inc. v. First Data Corp.*,
    241 F. Supp. 2d 1100 (N.D. Cal. 2003)..................................................................8

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
    98 F. Supp. 3d 1074 (C.D. Cal. 2015) ....................................................................8

## **Statutes**

28 U.S.C. § 1927.............................................................................................................15

## **Other Authorities**

*Friedman, Cal. Practice Guide: Corporations* (The Rutter Group 2004) .............12

## **Rules**

CA ST RPC Rule 1.13 ..............................................................................................11

Fed. R. Civ. Pro. 11 .................................................................................................15

## I.    **INTRODUCTION**

Plaintiff Robert Guillory ("*Plaintiff*") respectfully submits the instant Memorandum in Opposition to the motion of Defendant Backgrid USA, Inc. ("*Backgrid*"), which seeks to disqualify Craig Sanders ("*Mr. Sanders*") and/or the Sanders Law Group ("*SLG*") (collectively, "*Sanders*") as counsel for Plaintiff in this action.

At its heart, Backgrid's motion asks this Court to find an ethical violation on the part of Mr. Sanders for accepting the retention by Plaintiff in a copyright infringement action against Backgrid; a party whom Mr. Sanders never represented in any context.  Further, Mr. Sanders has not had any communications of any kind with Backgrid in over six years. In fact, the only interaction between Backgrid and Mr. Sanders occurred in the context of Mr. Sanders representing another client in a proposed but not consummated business arrangement in which Backgrid was itself represented by counsel, Joanna Ardalan, who is the very same attorney who authorized the filing of this motion.

Despite Ms. Ardalan knowing that Backgrid has no legitimate basis for its application, as an obvious litigation tactic, Backgrid filed the instant application.  In so doing, Backgrid accuses Mr. Sanders (a lawyer having practiced for more than 30-years) of misconduct. Backgrid's allegations in this regard are facially offensive, given that Mr. Sanders has appeared as counsel in nearly forty (40) of the United States District Courts, in five Courts of Appeal, in the Supreme Court, as well as in the courts of multiple States, without a single ethical violation or sanction.

In light of the foregoing, this Court's reaction to such an egregious request should mirror the incredulity of Mr. Sanders at having to respond to the baseless and scandalous allegations made herein.  That is particularly so, given that Ms. Ardalan participated in the only two meetings between Backgrid and an entity who is not party to this action, when Ms. Ardalan was present as counsel to Backgrid and Mr.

Sanders participated as counsel for said third party.

It is also noted that we have gone out of our way to not respond in kind to the derision expressed in Backgrid's motion.  That said, we do not wish our respect for Your Honor and for an attorneys' obligations in filing papers with the Court to be interpreted as diminishing in any way the offense taken at Backgrid's scandalous allegations.

The foregoing offense aside, a litigant's right to retain counsel of its choosing is one of the most fundamental tenets in our system of jurisprudence, yet Backgrid, without a legitimate basis, seeks to deprive Plaintiff of this right. In this regard, Backgrid's motion advances several theories upon which Sanders should be disqualified, however, each of its arguments are wholly without merit, and do not merely border on the frivolous but are, in fact, frivolous. As such, Sanders is loath to dignify this baseless motion with a response.  That is particularly so in this instance since, once the Court properly determines that there was no relationship between Sanders and Backgrid (a fact personally known to Ms. Ardalan), it should find that all authority relied upon by Backgrid in support of its motion is readily distinguishable or otherwise inapplicable.  That said, due to the gravity of the misconduct alleged, Sanders is constrained to respond, because no such misconduct occurred or exists.

Turning to the substance (but not merits) of the motion, Backgrid argues that Sanders cannot serve as counsel to Plaintiff in this action because such representation would purportedly conflict with the duty owed to a former client, FameFlynet, Inc. ("*FFN*"). This argument must be rejected for at least two reasons, *to wit*: (i) that FFN is not a party to this action (nor could it be, as it is long since defunct); and (ii) Backgrid lacks standing to assert a right belonging to another.

Backgrid next argues that Sanders must be disqualified because two of its principals were also officers and/or shareholders of FFN and Sanders' representation

of Plaintiff here would present a similar conflict. This argument is obviously legally erroneous, as Backgrid and/or Ms. Ardalan would have determined had they undertaken even the most basic research on the topic. As is set forth *infra,* it is well-settled that when an attorney represents a corporate entity, his duties are owed to the entity itself, and not to any individual shareholders or officers, notwithstanding that the corporate entity acts through them. This is true even with a closely held corporation, as both Backgrid and FFN purport to be.

Finally, Backgrid argues that Sanders must be disqualified because the parties had a meeting in which Backgrid purportedly discussed the possibility of retaining Sanders for copyright infringement actions. This argument goes beyond misrepresenting the facts insofar as the only two meetings at which Backgrid and Sanders were both present were to discuss a business proposal between Backgrid and a third-party entity. At those meetings, Sanders participated as counsel for the third-party and Backgrid was represented by its counsel of record in this case. In light of the foregoing, it is respectfully submitted that cause exists to question whether the supporting declarations by Defendant are perjurious and whether or not counsel's submission of this motion suborns that perjury.

The above point was discussed during the parties' pre-motion meet and confer. More specifically, the undersigned indicated that any such motion to disqualify would violate Rule 11 and that Plaintiff would seek relief thereunder, or, by the Court's inherent powers, should any such motion be filed. The instant filing certainly warrants such consideration.

## II.   <u>STATEMENT OF FACTS</u>

The facts giving rise to the claims asserted are not directly implicated by the instant motion. Therefore, for the sake of judicial economy, the facts are merely summarized herein, for context only.

Plaintiff is a professional real estate photographer by trade who is the legal and rightful owner of photographs which he licenses to online and print publications. *Dkt. No.* 1 (Complaint) at ¶ 15. Backgrid licenses and/or sells photographic content to third parties as well as the general public for commercial exploitation. *Complaint* at ¶ 19; *Backgrid Answer* (*Dkt. No.* 22 at ¶ 19). As a part of its business, Backgrid licenses photographic content to celebrity gossip outlets, such as TMZ, Daily Mail, The Sun, The Teal Mango, Total Frat Move and Hollywoodlife.com. *Complaint* at ¶ 23.

Relevant to this case, Plaintiff authored approximately twenty-one (21) interior, exterior and aerial photographs of the property located at 24877 Eldorado Meadow Road, Hidden Hills, California. *Complaint* at ¶ 24; *Dkt. No.* 1-1. Plaintiff registered the photographs with the United States Copyright Office on January 19, 2022 under Registration No. VA 2-289-987 and thereafter supplemented with Registration No. VA. 2-302-339 on May 9, 2022. *Complaint* at ¶ 25. Plaintiff commenced this action upon discovering that his photographs were being displayed on the Hollywoodlife.com website, among others. *Complaint* at ¶ 27. After inquiry, Hollywoodlife.com advised Plaintiff that it had obtained a license for the images from Backgrid. *Id.*

In the instant motion, Backgrid admits that it is in the "celebrity photography business" and that it licenses photographs to "major media outlets." *Dkt. No.* 26-1 at p. 2. Backgrid's motion does not deny that it was the source from which Hollywoodlife.com wrongfully obtained Plaintiff's photographs. Instead, Backgrid argues that Sanders must be disqualified from representing Plaintiff in this action because "Mr. Sanders, obtained privileged and highly sensitive information from Backgrid's principals during the course of an attorney-client relationship with Backgrid and another entity, FameFlyNet ["*FFN*"], in relation to copyright enforcement actions." *Dkt. No.* 26-1 at p. 1.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO MOTION TO DISQUALIFY COUNSEL

Continuing, Backgrid contends that "[it] met with plaintiff's counsel, Mr. Sanders, when he, along with a consultant who assists him in prosecuting copyright actions, discussed Mr. Sanders' representation of Backgrid in future copyright cases. During Backgrid's communications with Mr. Sanders, Backgrid understood that they were privileged and confidential. Among other things, Backgrid gave Mr. Sanders access to a password protected server accessible to only a select group of people. Backgrid also provided Mr. Sanders information about its business structure, strategy for enforcement and protection of copyrighted material, relationships with photographers, and its process for registering its copyrights. Backgrid also received legal advice from Mr. Sanders with respect to copyright infringement actions." *Id.*

To describe the above as being a sophistry of the facts would be an understatement. Indeed, the only accurate statement in Backgrid's description is that Mr. Sanders represented FFN in a number of copyright infringement cases, prior to the time that it ceased doing business six (6) years ago, in 2017. The remainder of Backgrid's description of the purported history between the parties is either intentionally vague as to the roles of Sanders and the "consultant," or, is simply a complete fabrication. We therefore offer the following to correct the record, particularly to call the Court's attention to the fact that Backgrid affirmatively fails to note that it was represented by Ms. Ardalan, the very attorney who advocates for this motion, in both such meetings.

Mr. Sanders began a business relationship with Randy Taylor, a principal with Picture Protection Service ("*PPS*") in or about 2013, and was retained as counsel for PPS. *See Declaration of Craig B. Sanders* (the "*Sanders Dec.*") at ¶ 7. Mr. Taylor introduced Mr. Sanders to FFN in or about 2013. *Sanders Dec.* at ¶ 8. At the time, PPS had just established a relationship to work with FFN to identify infringements of FFN's images and enforce FFN's copyrights against the infringers. *Declaration of Randy Taylor* (the "*Taylor Dec.*") at ¶ 3. As a result of that introduction, Mr.

Sanders was retained by FFN to prosecute copyright infringement claims identified by PPS. This relationship continued with FFN until approximately 2016-17, when FFN ceased doing business. Mr. Sanders' relationship with PPS continued after FFN ceased doing business. *Sanders Dec.* at ¶¶ 9-10.

At the same time, unrelated to FFN's closure, PPS was working with Mr. Sanders concerning a potential new business model PPS intended to offer to the public. *Sanders Dec.* at ¶ 11; *Taylor Dec.* at ¶ 4. More specifically, PPS was looking to create a vehicle through which it would purchase the exclusive rights to pictures from photo agencies and, thereafter, would pursue any cases it developed. *Taylor Dec.* at ¶ 4. The business model contemplated that PPS would be the plaintiff in any such actions, and that it would use Sanders as its counsel. *Taylor Dec.* at ¶ 9.

Mr. Taylor also maintained his relationship with Boris Nizon and Scott Cosman, who had been principals of FFN, and reached out to them to inquire as to whether Backgrid would be interested in working with PPS under the new model it had developed. *Taylor Dec.* at ¶ 5. Backgrid indicated that it would be receptive to having discussions concerning the new model and, to that end, Mr. Taylor arranged to have a telephonic meeting between Backgrid and PPS to discuss same. *Id*.

As a result of Mr. Taylor's efforts, two telephonic meetings took place; one on July 24, 2017 and another on August 2, 2017. *Sanders Dec.* at ¶ 14; *Taylor Dec.* at ¶ 6. Present on the calls for Backgrid were Jon Nicolini, Steve Ginsburg, Alex Kantif, Boris Nizon and Scott Cosman, as well as their attorney Joanna Ardalan, Esq. *Id.*; *Sanders Dec.* at ¶ 14. Present on the call for PPS was Mr. Taylor, along with his partners Dan Levine and Robert Shaw. *Taylor Dec.* at ¶ 6. Mr. Sanders participated in the call as counsel for PPS. *Sanders Dec.* at ¶ 14; *Taylor Dec.* at ¶¶ 7-8.

In those meetings, PPS stated that its proposal would be for PPS (or one of its affiliates) to acquire the rights to images from Backgrid's photo library and

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO MOTION TO DISQUALIFY COUNSEL

thereafter pursue infringement cases in its own name. *Sanders Dec.* at ¶ 15; *Taylor Dec.* at ¶ 9. In other words, PPS (or one of its affiliates) would be the plaintiff in those cases and Mr. Sanders would serve as PPS' counsel in any resulting litigation. *Sanders Dec.* at ¶¶ 15-16; *Taylor Dec.* at ¶ 9.

Under the proposed transaction, at no time was it contemplated that Mr. Sanders would be retained by Backgrid nor would Mr. Sanders at any time have been Backgrid's attorney. *Sanders Dec.* at ¶ 16; *Taylor Dec.* at ¶ 9. That is precisely the reason for which Ms. Ardalan was present in such meetings, as counsel for Backgrid. Therefore, Backgrid's contention that it believed any communications it had with Mr. Sanders were privileged and for the purpose of seeking representation is not only devoid of factual support, it is belied by the fact that Backgrid's attorney (then and current), Ms. Ardalan also participated in those meetings as counsel for Backgrid. *Sanders Dec.* at ¶¶ 17-18; *Taylor Dec.* at ¶¶ 6-9.

Backgrid's contention that Mr. Sanders provided legal advice and/or strategies to it is not only without support, it is flatly contradicted by the record. *Sanders Dec.* at ¶ 18; *Taylor Dec.* at ¶ 10. More specifically, Backgrid relies solely on two emails which it contends were sent by Mr. Sanders to support its claim that Mr. Sanders provided legal advice to it (*Dkt. Nos.* 26-3 and 26-4). *Taylor Dec.* at ¶ 10. This argument is also belied by the record insofar as even the briefest review of those emails show that both were sent by Mr. Taylor on behalf of PPS, and not by Mr. Sanders or his then firm. *Taylor Dec.* at ¶ 10. While Mr. Sanders was copied on those emails, that was merely a function of the fact that Mr. Sanders was PPS' attorney and PPS wanted him to be aware of any correspondence between it and Backgrid with respect to the business proposal. *Taylor Dec.* at ¶ 10.

Backgrid's contention that it "shared with Mr. Sanders, through Picture Protection Services [sic.], access to its proprietary software, which is available to only a select group of people/companies who have been given a username and

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO MOTION TO DISQUALIFY COUNSEL

password" (*Dkt. No.* 26-1 at p. 3) is fallacious. *Sanders Dec.* at ¶ 20; *Taylor Dec.* at ¶¶ 11-12. More specifically, PPS had access to FFN's photo library as a result of the parties' prior relationship, however, no new information or access point was provided by Backgrid to PPS as a result of the parties' discussion of PPS' new business proposal. *Taylor Dec.* at ¶¶ 11-12. Further, Sanders did not have access to FFN's password-protected photo library at any time. *Sanders Dec.* at ¶ 20; *Taylor Dec.* at ¶¶ 11-12. Instead, Sanders relied on PPS to access same and provide information on an as-requested basis. PPS did not provide Sanders with any of the access credentials provided to it. *Sanders Dec.* at ¶ 20.  Finally, the "access" that was provided was the same access that FFN provided to all of its customers interested in purchasing images from its photo library. *Taylor Dec.* at ¶ 12.

## III.   ARGUMENT

Motions to disqualify counsel are governed by state law. *W. Sugar Coop. v. Archer-Daniels-Midland Co*., 98 F. Supp. 3d 1074, 1080 (C.D. Cal. 2015) (citing *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 967 (9th Cir. 2009)). While "[a] trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc*., 20 Cal. 4th 1135, 1145, 86 Cal.Rptr.2d 816, 980 P.2d 371 (1999) ("*SpeeDee*")), it is equally well-settled that "[m]otions to disqualify counsel are strongly disfavored." *Visa U.S.A., Inc. v. First Data Corp*., 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003).

For one, motions to disqualify involve "a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility." *Comden v. Superior Court*, 20 Cal. 3d 906, 915 (1978). Moreover, the ethical rules may often be used tactically. See e.g., *Optyl Eyewear Fashion*

*Intern. Corp. v. Style Companies, Ltd*., 760 F.2d 1045, 1050 (9th Cir. 1985). As a result, "disqualification motions should be subjected to particularly strict judicial scrutiny." *Id*. Elsewhere stated, "disqualification is a 'drastic measure' that is generally disfavored and imposed only when absolutely necessary." *Ramirez v. Trans Union, LLC*, No. 12-0632, 2013 WL 1164921, at *2 (N.D. Cal. Mar. 20, 2013) (internal quotations added). Therefore, "[t]he moving party [] carries a heavy burden and must satisfy a high standard of proof." *Kelly v. Roker*, No. 11-5822, 2012 WL 851558, at *2 (N.D. Cal. Mar. 13, 2012).

In this case, the Court should readily find that Backgrid has failed to satisfy its heavy burden and has not come close to satisfying its "high standard of proof." Indeed, the motion is not only a clearly tactical maneuver, but it relies on borderline perjurious Declarations to support the unwarranted relief sought.

### A. THERE WAS NOT NOR IS ANY ATTORNEY-CLIENT RELATIONSHIP BETWEEN SANDERS AND BACKGRID

In the first prong of its motion, Backgrid argues that, while it never retained Mr. Sanders, "it received legal advice from him and provided him with confidential information, which is sufficient to create a fiduciary relationship for purposes of a conflict-of-interest analysis." *Dkt. No.* 21-1 at Point IV (citing *Beery v. State Bar*, 43 Cal. 3d 802, 739 P.2d 1289 (1987) and *SpeeDee, supra.* We need not discuss the analyses in *Beery* and *SpeeDee*, insofar as we do not take issue with the general interpretation of law that a party's consultation with an attorney may be relevant to a conflict-of-interest analysis, even if the consultation did not result in formal retention. Instead, it is Sanders' position that neither *Beery* nor *SpeeDee* are relevant, insofar as there was no consultation between Sanders and Backgrid in which retention was ever discussed.

As was stated above, there was never any consultation with Sanders in which Backgrid could have plausibly believed that it was imparting information to Sanders

for the purposes of a possible retention. To the contrary, the business model proposed by PPS was for PPS to acquire some or all of Backgrid's photo library and then PPS would retain Sanders to prosecute any claims resulting from PPS' search for potential infringements of the images. That is precisely the reason for which Backgrid had its own counsel (that appearing for Backgrid in this action) present at all such meetings. There were never any consultations between Sanders and Backgrid directly, and the emails which Backgrid claims to have been sent by Sanders for the purposes of conveying litigation strategies or the like were clearly authored and sent by PPS, not by Sanders. In light of the foregoing, no further discussion is required.

## B. Sanders' Relationship with FFN is Irrelevant

In the next prong of its motion, Backgrid argues that Sanders should be disqualified from representing Plaintiff in this action because "when an attorney has received information from one affiliate which is substantially related to a claim against another affiliate, the attorney should ordinarily be disqualified from advancing that claim against the other affiliate." *Dkt. No.* 26-1 at Point V. This argument is erroneous insofar as Backgrid does not hold itself out to be an affiliate of FFN and, in fact, it is not. Indeed, a search of the California Secretary of State's business registration website shows that FFN's standing is "not good" and that it has been "inactive" since no later than December 28, 2021. Further, Backgrid does not dispute the fact that FFN ceased to do business as of 2017. In other words, the facts show that Backgrid may have acquired assets owned by FFN at the time it shuttered its business, but does not hold any filial relationship with the now defunct entity.

### i. Backgrid Lacks Standing to Assert any Right Otherwise Belonging to FFN

While it cannot be disputed that Sanders had an attorney-client relationship with the now defunct FFN, the fact that such a relationship existed does not inure to

1    the benefit of Backgrid, nor does it form a basis for Backgrid to seek the
2    extraordinary (and wholly unwarranted) relief sought herein. That is because a party
3    generally must assert his own legal rights and interests and cannot rest his claim to
4    relief on the legal rights or interests of third parties. *Allied/Royal Parking L.P. v.*
5    *United States*, 166 F.3d 1000, 1004 (9th Cir. 1999) (quoting *Northern Plains*
6    *Resource Council v. Lujan*, 874 F.2d 661, 667 (9th Cir. 1989)). In other words, even
7    if FFN could argue that Sanders' representation of Plaintiff in this action (who is not
8    alleged to be a former client of FFN) would violate a duty owed to a former (yet now
9    defunct) client, it does not follow that Backgrid, as a purchaser of assets at FFN's
10   proverbial "estate sale" can assert any such rights.

### ii.  Sanders Owes No Duty to Backgrid's Principals

12        As a companion to the argument advanced above, Backgrid argues that
13   Sanders should be disqualified from representing Plaintiff in this action because he
14   is "well aware of Mr. Nizon and Mr. Cosman's attitudes towards evaluation of
15   willful copyright infringement claims, the prosecution of copyright infringement
16   actions, negotiation of settlement, and who are willful infringers and what makes
17   their conduct willful, all of which were disclosed within an attorney-client
18   relationship [with FFN]." *Dkt. No.* 26-1 at p. 9.

19        This argument is legally erroneous insofar as "a lawyer employed or retained
20   by an organization shall conform his or her representation to the concept that the
21   client is the organization itself, acting through its duly authorized directors, officers,
22   employees, members, shareholders, or other constituents overseeing the particular
23   engagement." CA ST RPC Rule 1.13.

24        Elsewhere stated, in representing a corporation, an attorney's client is the
25   corporate entity, not individual shareholders or directors, and the individual
26   shareholders or directors cannot presume that corporate counsel is protecting their
27   interests. *Meehan v. Hopps*, 144 Cal. App. 2d 284, 301 P.2d 10 (1956); *Skarbrevik*

28

1   *v. Cohen, England & Whitfield*, 231 Cal. App. 3d 692, 705, 282 Cal. Rptr. 627 (Ct.

2   App. 1991) [corporate attorney owed no duty to minority shareholder in arranging

3   elimination of preemptive rights to allow majority shareholders to increase their

4   ownership]; *Friedman, Cal. Practice Guide: Corporations* (The Rutter Group 2004)

5   ¶ 6:3, p. 6–2.).

6           Conflicts of interest between a corporation and its officers, directors and

7   shareholders are particularly problematic for corporate counsel where, as here, the

8   corporation is a closely held one, with few shareholders. *La Jolla Cove Motel &*

9   *Hotel Apartments, Inc. v. Superior Ct*., 121 Cal. App. 4th 773, 784–85, 17 Cal. Rptr.

10  3d 467, 475 (2004). Although corporate counsel may develop a fiduciary

11  relationship with individual shareholders or directors, even in that situation, the

12  attorney's ultimate loyalty is to the corporation, not individual shareholders, officers

13  or directors. *Id*. Thus, where an adversarial setting presents itself, pitting the

14  corporation against one or more of its officers, directors or shareholders, corporate

15  counsel may still represent the corporation against those individuals, even though he

16  or she may have received confidential information about them in the course of

17  representing the corporation. (*Id*. citing *Meehan, supra*).

18          "An attorney representing a corporation does not become the representative

19  of its stockholders merely because the attorney's actions on behalf of the corporation

20  also benefit the stockholders; as attorney for the corporation, counsel's first duty is

21  to the corporation." *Sprengel v. Zbylut*, 40 Cal. App. 5th 1028, 1042, 253 Cal. Rptr.

22  3d 561, 571 (2019), as modified (Sept. 17, 2019), as modified (Nov. 4, 2019). That

23  is because there is no shareholder exception to the corporate attorney-client privilege

24  in California. Instead, the general rule has been stated as follows: "An attorney

25  representing a corporation does not become the representative of its stockholders

26  merely because the attorney's actions on behalf of the corporation also benefit the

27  stockholders; as attorney for the corporation, counsel's first duty is to the

28

corporation." *Nat'l Football League Properties, Inc. v. Superior Ct*., 65 Cal. App. 4th 100, 107–08, 75 Cal. Rptr. 2d 893, 898 (1998) (citing *Skarbrevik, supra*).

In light of the foregoing precedent, the question of whether certain principals of Backgrid were also principals of FFN is irrelevant to the question of whether Backgrid is able to deny Plaintiff his right to retain counsel of his choice in this action. Simply, the prior interaction between Mr. Sanders and Messrs. Nizon and Cosman as part of his retention by FFN did not make Mr. Sanders counsel for Nizon or Cosman and would not translate into a fiduciary relationship with either gentlemen; regardless of whether they were involved in an entirely dissimilar business or an identical business as part of a restructuring.

## C. BACKGRID'S "SUBSTANTIALLY RELATED" ARGUMENT IS ERRONEOUS

In the next prong of its motion, Backgrid argues that "Sanders should be disqualified from representing Plaintiff against [it] in a photography copyright infringement case because the matters are substantially related." *Dkt. No.* 26-1 at Point VI. In support, Backgrid quotes from *Monster Energy Co. v. Vital Pharms., Inc*., No. EDCV181882JGBSHKX, 2018 WL 6431870 (C.D. Cal. Nov. 30, 2018) for the putative standard which, according to Backgrid, requires the Court to look "first to the allegations in the complaint and the nature of the evidence that would be helpful in establishing those allegations." *Dkt. No.* 26-1 at p. 9. This is not a direct quote from *Monster Energy* but, rather is a paraphrasing of the discussion, which reads as follows: "[i]n determining whether a substantial relationship exists, a court considers three factors: (1) similarities between the two factual situations, (2) the legal questions posed, and (3) the nature and extent of the attorney's involvement in the cases." *Monster Energy,* 2018 WL 6431870 at *3 (internal quotations and citations omitted).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO MOTION TO DISQUALIFY COUNSEL

Backgrid's reliance on *Monster Energy* is misplaced. That is because *Monster Energy* involved a situation in which there was a ***successive representation*** by the attorney and firm sought to be disqualified. More specifically, in *Monster Energy,* the individual attorney representing Monster had previously represented Vital Pharmaceuticals, Inc. in what Monster claimed to be a "substantially related lawsuit." It was for that reason that the Court had to examine the similarity between the two cases in order to determine whether the attorney (and/or firm) acquired information which could inure to the detriment of the former client if the attorney (and/or firm) were not disqualified. While Monster argued that there was not a substantial similarity between the claims because the complaints involved different claims about different products, the Court disagreed and found that disqualification was warranted because the attorney represented the adverse party "in a lawsuit between the same litigants which involved highly similar factual and legal claims." *Monster Energy*, 2018 WL 6431870, at *3.

In light of the foregoing, it becomes readily apparent as to why Backgrid chose to selectively quote (or misquote) *Monster Energy.* That is because Backgrid cannot cite to any case in which Sanders represented it in any capacity, whether in litigation or otherwise. Backgrid also cannot claim that Plaintiff Robert Guillory is or was a client of Backgrid or that the current action is a successive representation. This further underscores the frivolity of Backgrid's motion.

Backgrid's reliance on the decisions in *Acacia Pat. Acquisition, LLC v. Superior Ct*., 234 Cal. App. 4th 1091, 184 Cal. Rptr. 3d 583 (2015), *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 81 Cal. Rptr. 2d 425 (1999), and *Jessen v. Hartford Cas. Ins. Co*., 111 Cal. App. 4th 698, 3 Cal. Rptr. 3d 877 (2003) fails for the same reason—these cases all involved instances of successive representation wherein the moving party was able to identify the specific case(s) and relationship(s) that would warrant disqualification. Here, there was no

relationship between Sanders and Backgrid.  As aforenoted, the fact that two of the former principals of FFN are now principals in Backgrid does not alter this analysis. Insofar as this argument was fully developed in Point B.ii, *supra,* those arguments are incorporated by reference, rather than by repetition.

### D. THE COURT SHOULD EXERCISE ITS EQUITABLE POWERS AND SANCTION DEFENDANT FOR BRINGING A WHOLLY FRIVOLOUS MOTION

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power."  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).  In this case, we do not ask the Court to sanction Backgrid and/or its counsel under Rule 11, insofar as relief under such Rule requires that a proposed motion/application be served not less than twenty-one days before the motion is actually filed and noticed and, here, that procedural requirement has not been met. Relief under 28 U.S.C. § 1927 and/or under the Court's inherent power has no such procedural prerequisite, and Plaintiff believes that such relief is warranted here.

As the Ninth Circuit has repeatedly held, "recklessness suffices [to impose sanctions under] § 1927, but bad faith is required for sanctions under the court's inherent power."  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002), as amended (Feb. 20, 2002) (citing *Fink, supra; United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) ("we held that § 1927 sanctions require a finding of recklessness or bad faith"); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) ("An award of sanctions under 28 U.S.C. § 1927 or the district court's inherent authority requires a finding of recklessness or bad faith"); *In re Keegan Mgmt. Co., Sec. Lit.,* 78 F.3d 431, 436 (9th Cir. 1996).

In this case, it is respectfully submitted that sanctions are both warranted and necessary, regardless of the metric applied.  That is because both of Backgrid's declarants—as well as its counsel—were fully aware that in the only two meetings in which Sanders and Backgrid both participated were with respect to the business proposition offered by PPS to Backgrid.  Further, both of Backgrid's declarants as well as its counsel were fully aware that Sanders was appearing in the capacity as counsel for PPS, and that Backgrid's current counsel individually participated as counsel for Backgrid.  As such, the statements offered on the instant motion contending that there was purportedly an attorney-client relationship between Sanders and Backgrid—or that such a relationship was even discussed—is recklessly made, if not demonstrably false (or perjuriously made).  The same is true of the argument that Sanders should be disqualified as a result of his prior relationship with FFN.  As was stated above, even the briefest of research would have alerted counsel to the fact that Sanders' prior representation of FFN, which ended at least six years ago, does not implicate any interest or concern of Messrs. Nizon and/or Cosman.

Finally, it is noted that the Eleventh Circuit Court of Appeals has determined that "[t]he key to unlocking a court's inherent power is a finding of bad faith." *In re Haney*, No. 21-02007-TOM-13, 2022 WL 412809, at *22 (Bankr. N.D. Ala. Feb. 10, 2022) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing *Glatter v. Mroz* (*In re Mroz*), 65 F.3d 1567, 1575 (11th Cir. 1995)).  Continuing, the Court held that "A finding of bad faith is warranted where an attorney [or a client] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id*. (citing <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1121 (11th Cir. 2001) (citations omitted).  Sanctions are "especially appropriate where counsel takes frivolous legal positions supported by scandalous accusations." [*Amlong & Amlong, P.A. v. Denny's, Inc*. 500 F.3d 1230 (11th Cir. 2007)]. ... The seriousness of the allegations combined with the lack of any

evidentiary support or minimal investigation support a finding of bad faith. *Gwynn v. Walker* (*In re Walker*), 532 F.3d 1304, 1309-10 (11th Cir. 2008).

Here, Backgrid has accused Sanders of wrongdoing by failing to decline his representation of Plaintiff and compounded that offense by refusing to withdraw as counsel after being accused of committing an ethical violation.  These are serious allegations and should result in sanctions if there were any merit to such claims.  Unfortunately for Backgrid—and its counsel—there is not.  Backgrid's counsel was a party to the only two meetings between PPS and Backgrid, and fully understood that Sanders was participating as counsel for PPS (the very purpose for which Ms. Ardalan participated).  Therefore, the filing of this motion and accusation of misconduct on the part of Sanders which is flatly contradicted by the record should warrant the imposition of sanctions as against Backgrid and/or its counsel to deter such frivolous conduct in the future.

In light of the foregoing, the only conclusion to be reached is that the instant motion was brought in bad faith and/or for the purpose of harassing Plaintiff and/or Sanders or to vexatiously multiply the proceedings.

## <u>CONCLUSION</u>

For all the reasons set forth above, it is respectfully submitted that Backgrid's motion to disqualify should be denied, together with any such other and further relief as this Court deems just, equitable, and proper.

DATED:      June 9, 2023

**SANDERS LAW GROUP**

By:   */s/ Craig B. Sanders*
Craig B. Sanders, Esq. (Cal Bar 284397)
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
Tel:   (516) 203-7600
Email: csanders@sandersalaw.group
*Attorneys for Plaintiff*